## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

JUDITH HARKER,

Plaintiff,

-vs-                                                  Case No.  2:06-cv-24-FtM-29SPC

JO ANNE B. BARNHART
Commissioner of Social Security ,

Defendant.

_____

## REPORT AND RECOMMENDATION[1]

**TO THE UNITED STATES DISTRICT COURT**

_____This matter comes before the Court on the Plaintiff, Judith A. Harker's Complaint Seeking Review of the Final Decision of the Commissioner of Social Security (Commissioner) denying the Plaintiff's Claim for Disability Insurance (Doc. # 1) filed on January 10, 2006. On March 16, 2006, the Defendant filed a Motion for Remand under Sentence Six (Doc. #4).  The Court granted the Defendant's request on March 17, 2006.  On May 9, 2006, the Defendant filed a Motion to Reopen (Doc. #6) which was subsequently granted.  See Doc. #9. The Plaintiff filed her Memorandum of Law in Support of the Complaint (Doc. #17) on June 16, 2006.  The Commissioner filed her Memorandum of Law in Support of the Commissioner's Decision (Doc. #18) on July 12, 2006.  Thus, the Motion is now ripe for review.

The Undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the pleadings and memoranda submitted by the parties in this case.

---

[1]This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to 28 U.S.C. § 405(g).

## FACTS

### *Procedural History*

The Plaintiff filed her application for Disability Insurance Benefits on February 26, 2003. (Tr. 11, 72-74). The Plaintiff had a previously filed application that resulted in an unfavorable decision by the Commissioner and the decision was affirmed through the appeal process in the United States District Court, Middle District of Florida. See Harker vs. Commissioner of Social Security, 2:04-cv-501-SPC. The Plaintiff filed a claim for Supplemental Security Income payment on March 20, 2003. (Tr. 11). The claims were denied initially and upon reconsideration. A request for hearing was timely filed. (Tr. 67-68). The Plaintiff appeared and testified at a hearing held on April 26, 2005 in Tampa, Florida before the Honorable Victor Cruz, Administrative Law Judge. (Tr. 11, 26-55). The ALJ issued an unfavorable decision on July 21, 2005. (Tr. 11-18). The Plaintiff filed a Request for Review on September 19, 2005. (Tr. 6). The Appeals Council denied the Plaintiff's request on November 21, 2005 making the ALJ's decision the final decision of the Commissioner. (Tr. 3). Pursuant to 42 U.S.C.§ 405(g), the Plaintiff now seeks judicial review of the Commissioner's final decision.

### *Plaintiff's History*

The Plaintiff was born on May 8, 1957 and was forty-eight (48) years old at the time of the Commissioner's decision on July 21, 2005. (Tr. 18, 72). The Plaintiff has a high school education. (Tr. 12). The Plaintiff has pas relevant work experience as a cashier-fast foods, cook-fast foods, and a short order cook. (Tr. 12). The Plaintiff alleges an onset disability date of December 10, 2000, due to foot pain that prevented her from prolonged standing. (Tr. 12). On March 20, 2003, the Plaintiff was informed that based upon the previously adjudicated application, the earliest onset disability date for the March 10, 2003 applications was December 17, 2002. (Tr. 105-107).

*Medical and Psychological History*

The medical records shows that the Plaintiff had a history of psoriasis of the lower extremities. (Tr. 184-224).  The Plaintiff was treated by Dr. R. John Salm, a podiatric surgeon for severe heel pain.  (Tr. 216).  In a letter dated November 21, 2000, Dr. Salm stated that the Plaintiff had been undergoing treatment for severe heel pain bilaterally, worse with initial ambulation and after period of extended weightbearing.  (Tr. 216).  Examination revealed severe inferior arch and heel tenderness in both feet.  (Tr. 216).  Radiologic testing revealed the presence of mild inferior calcaneal spurring bilaterally.  (Tr. 216).  The Plaintiff was diagnosed with heel spur with plantar fascitis bilaterally.  (Tr. 216).  The Plaintiff was initially treated conservatively with low-dye tapings, multiple cortisone shots, and anti-inflammatory drugs to treat the symptoms.  (Tr. 216).  Dr. Salm recommended a heel spur resection/plantar facsial release surgery.  (Tr. 216).  A duplicate letter was issued on March 13, 2001. (Tr. 214).

On February 15, 2001, the Plaintiff underwent a comprehensive evaluation and consultation with Dr. Kenneth Burdick.  (Tr. 133).  Dr. Berdick stated the Plaintiff's two chief complaints.  First was bilateral plantar fasciities which gives her diffculty and pain in her heels bilaterally and also along the  plantar fascia, particularly laterally.  (Tr. 133).  Dr. Berdick stated the Plaintiff had classic signs and symptoms of "heel spurs" along with her fasciitis.  (Tr. 133).  The Plaintiff stated that the orthotics do not help and neither does the anti-inflammatory drugs.  (Tr. 133).  However, the Plaintiff did admit that she does not experience plantar foot pain with  rest or only standing for minimal periods of time.  (Tr. 133).  The Plaintiff's second complaint was chronic anterior tibial dermatitis. (Tr. 133).  Steroid creams and oral medication  improve the problem.  (Tr. 133). Upon examination, the Plaintiff was well-developed, considered somewhat obese and in no acute distress.  (Tr. 134). The Plaintiff demonstrated bilateral anterior tibial eczema type dermatitis of a chronic nature with

some hyper and hypopigmentation.  (Tr. 134).  There was evidence of tenderness to palpation over the plantar areas of her heels and lateral plantar fascia area.  There were no varicosities or ulcerations and retained full range of motion without pain on movement of all joints.  (Tr. 14, 134).  There was no evidence of acute joint inflammation, erythema or warmth.  Neurological examination was normal. (Tr. 134).  Dr. Berdick opined that the Plaintiff needed an updated podiatry consultation.  (Tr. 134). The Plaintiff was unable to stand for long periods of time.  (Tr. 134).  The dermatitis problem was easily controlled and should not impact her day-to-day functioning.  (Tr. 134).  Dr. Berdick stated that without the appropriated podiatry care and possibly surgery, the Plaintiff's work training was limited to sedentary circumstances.  (Tr. 134).

On March 29, 2001, the Plaintiff underwent a surgical resection of the heel spur with plantar fascial release bilaterally performed by Dr. Salm.  (Tr. 212-213).  The Plaintiff returned in one week for a post-operative follow-up.  (Tr. 211).  Dr. Salm noted that the Plaintiff was healing well, with no signs of infection and was able to bear weight for approximately twenty (20) minutes.  (Tr. 211). On October 11, 2001, the Plaintiff notified Dr. Salm that her feet still hurt.  (Tr. 209).

On November 6, 2001, the Plaintiff presented to Dr. Salm with a chief complaint of foot pain. (Tr. 204).  The Plaintiff complained that the pain radiated to the mid-arch and was very sensitive to palpation.  (Tr. 204).  Dr. Salm diagnosed the Plaintiff with Neuroma on the right 3rd interspace.  (Tr. 204).

On November 27, 2001, the Plaintiff presented to Dr. Salm with a chief complaint that painful feet made walking almost unbearable.  (Tr. 203).  The Plaintiff stated that the balls of her feet were bothering her for months and at times it felt like she was stepping on something.  (Tr. 203).  Upon examination, Dorsalis Pedis and Posterior Tibial Pulses were +2/4 bilaterally.  (Tr. 203).  VFT brisk digits 1 through 5 bilaterally.  (Tr. 203).  Skim temperature was warm to cool from tibial tuberosity

to toes bilaterally.  (Tr. 203).  There was mild edema and erythema along the plantar aspect of the right 1st interspace with tenderness with palpation of this region, and shooting pain reproduced with medial-lateral compression of metatarsal heads.  Sensation was grossly intact and symmetrical bilaterally.  (Tr. 203).  Radiographs revealed no evidence of boney injury with mild intermetatarsal space narrowing 2nd and 3rd left.  (Tr. 203).  Dr. Salm opined that the Plaintiff had Neuroma 3rd interspace bilaterally.  (Tr. 203).  Dr. Salm treated the Plaintiff with a series of three (3) injections with .2cc 40 mb/cc depomedrol into the 3rd interspace of each foot.  (Tr. 203).  On January 14, 2002, Dr. Salm stated in a letter that the Plaintiff was only capable of working in a sedentary position because severe plantar fascitis prevented her from prolonged standing.  (Tr. 199).          On June 26, 2002, the Plaintiff presented to Dr. Vera Robert to establish care and to refill blood pressure medication.  (Tr. 13, 135, 139-140).  The Plaintiff reported a history of psoriasis since the age of fourteen (14).  (Tr. 139).  The Plaintiff listed student as her occupation.  (Tr. 139).  Upon examination, the Plaintiff had multiple plaques on her lower extremities.  (Tr. 140).  In November 2002, the Plaintiff was seen again for refills of blood pressure medication.  (Tr. 135).  The Plaintiff's blood pressure appeared to be in good control at 120/70.  (Tr. 135).  Dr. Robert noted that Plaintiff's left foot 3rd and 4th toe nerve operated on by Dr. Salm.  (Tr. 135).

On December 11, 2002, the Plaintiff presented to Dr. Salm stating that her left foot was getting better with no pain.  (Tr. 189).  She wanted to have the right foot done right away.  (Tr. 189) On December 18, 2002, the Plaintiff returned for a post-operative check up.  (Tr. 189).  Dr. Salm noted that she was healing well, there was no erythema, no infection and mild tenderness.  (Tr. 189). On December 20, 2002, the Plaintiff returned complaining of foot pain.  (Tr. 189).  The Plaintiff's right foot was swollen. (Tr. 189).  There was no erythema or drainage.  (Tr. 189).  The Plaintiff's sutures were removed and she was told to use ice and elevate the foot.  (Tr. 189).

On January 13, 2003, the Plaintiff returned to Dr. Salm with complaints of mild pain. (Tr. 186). The Plaintiff stated that she could not walk on the entire foot but rather walked on the outside of her foot. (Tr. 13, 186). The Plaintiff further stated that she continued to have swelling, significant pain, and pins and needles feeling. (Tr. 13, 186). Examination revealed a sensitivity to touch, pressure, and ice. (Tr. 13, 186).

The Plaintiff began physical therapy on January 14, 2003 with Suzanne Mullin, M.P.T., of the Sports Specialty and Rehabilitation Center. (Tr. 164-165). The Plaintiff experienced difficulty tolerating treatment. (Tr. 163). She could not tolerate the ice and stimulation for more than ten (10) minutes. (Tr. 163). After the examination, it was determined that the Plaintiff would participate in physical therapy three (3) times a week for 3-4 weeks. (Tr. 165). It was noted that progression may be slow due to the Plaintiff's sensitivity. (Tr. 163). On January 16, 2003, the Plaintiff was able to perform all the exercises without difficulty. (Tr. 161). Sensitivity was decreasing somewhat and she was progressing with therapy. (Tr. 161). The Plaintiff continued to make slow progress. (Tr. 13,). On February 3, 2003, the Plaintiff demonstrated increased weight shifting and was walking short distance without a cane. (Tr. 152). Her gait was improving and allowing her to walk more and run errands. (Tr. 152). The Plaintiff stated she was feeling better and was ready to return to school. (Tr. 152). By February 18, 2003, the Plaintiff stated she was feeling better and better. (Tr. 145). The Plaintiff still had a little bit of soreness and swelling but overall much improved since her last cortisone shot. (Tr. 145). On February 21, 2003, the Plaintiff stated that she was doing great and has no pain in her foot anymore. (Tr. 143).

On March 6, 2003, the Plaintiff presented to Dr. Salm for a six week post-operative visit. (Tr. 186). The Plaintiff had athlete's foot on the left foot and the right foot still hurt. (Tr. 186). Dr. Salm noted that the Plaintiff was responding slowly but physical therapy felt she was improving. (Tr. 186).

There was a palpable nodule at the 2nd interspace.  (Tr. 186). Dr. Salm stated the Plaintiff had scar tissue/fibriosis and gave the Plaintiff an injection.  (Tr. 186).

On March 18, 2003, the Plaintiff was discharged from physical therapy.  (Tr. 142).  It was reported that the Plaintiff was fully functional and had returned to school.  (Tr. 142).  The Plaintiff had achieved 100% of her goals.  (Tr. 142).

On September 15, 2004, Dr. Salm completed a form that stated the Plaintiff was diagnosed with chronic foot pain with lateral ankle instability.  (Tr. 234).  He was unable to determine an expected date to return to work.  (Tr. 234).  On April 15, 2004, Dr. Salm stated again that the Plaintiff was unable to work due to her chronic plantar fasciitis because she could not be on her foot too long.  (Tr. 238).

State Agency physicians completed residual functional capacity (RFC) assessments on the Plaintiff based upon documentary evidence.  (Tr. 13, 125-132, 226-233). In the first assessment dated April 18, 2000, the Plaintiff was found capable of lifting twenty (20) pounds occasionally, frequently lifting ten (10) pounds, standing/walking for 6 hours in an 8 hour day, sitting about 6 hours in an 8 hour day with unlimited pushing or pulling.  (Tr. 126).  In the second assessment dated July 18, 2003, the Plaintiff was found capable of occasionally lifting 50 pounds, frequently lifting 25 pounds, standing/walking 6 hours in an 8 hours day, sitting 6 hours in an 8 hour workday with unlimited pushing or pulling.  (Tr. 227).

<u>*Administrative Law Judge's Decision*</u>

Upon consideration of the record, the ALJ found that the Plaintiff meets the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through June 30, 2005.  (Tr. 17).  The ALJ found that the Plaintiff has not engaged in substantial gainful activity since the alleged onset of

disability. (Tr. 17). The ALJ found that the Plaintiff's chronic plantar fascitis status post removal of Morton's neuroma of the left foot and status post surgical resection of a heel spur are considered "severe" based on the requirements in the Regulations 20 CFR §§ 404.1520(c) and 416.920(c). (Tr. 17). The ALJ found that these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 17). The ALJ found that the Plaintiff's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision. (Tr. 17). The ALJ concluded that the Plaintiff has the residual functional capacity to perform a wide range of sedentary work. (Tr. 17). The ALJ found that the Plaintiff was unable to perform any of her past relevant work. (Tr. 17). The ALJ determined that the Plaintiff is a "younger individual" with a "high school (or high school equivalent) education". (Tr. 17). The ALJ found that the Plaintiff has transferable skills from semi-skilled work previously performed as described in the body of the decision. (Tr. 17). The ALJ concluded that the Plaintiff has the residual functional capacity to perform a significant range of sedentary work. (Tr. 17). The ALJ found that, although the Plaintiff's exertional limitations do not allow her to perform the full range of sedentary work, using Medical-Vocational Rules 201.21 & 201.38 as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform. (Tr. 18). Examples of such job include work as a surveillance system monitor and school bus monitor. (Tr. 18). Therefore, the ALJ concluded that the Plaintiff was not under a "disability", as defined in the Social Security Act, at any time through the date of this decision. (Tr. 18).

## THE STANDARD OF REVIEW

### A. Affirmance

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the

findings are supported by substantial evidence, <u>Richardson v. Perales</u>, 402 U.S. 389, 390, 91 S. Ct.

1420, 28 L. Ed 2d 842 (1971).  In evaluating whether a claimant is disabled, the ALJ must follow the

sequential inquiry described in the regulations[2].  <u>See</u> 20 C.F.R. §§ 404.1520(a), 404.920(a).  The

Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. §

405(g).  Substantial evidence is more than a scintilla–<i>i.e.</i>, the evidence must do more than merely

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable

person would accept as adequate to support the conclusion.  <u>Foote v. Chater</u>, 67 F.3d 1553, 1560

(11th Cir. 1995) (citing <u>Walden v. Schweiker</u>, 672 F.2d 835, 838 (11th Cir. 1982)); <u>Richardson</u>, 402

U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court

will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the

reviewer finds that the evidence preponderates against the Commissioner's decision.  <u>Edwards v.

Sullivan</u>, 937 F.2d 580, 585 n.3 (11th Cir. 1991); <u>Barnes v. Sullivan</u>, 932 F.3d 1356, 1458 (11th Cir.

1991).  The District Court must view the evidence as a whole, taking into account evidence favorable

---

[2]The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability.  The steps are as follows:
  *Step 1.*  Is the claimant engaged in substantial gainful activity?  If the claimant is engaged in such activity, then he or she is not disabled.  If not, then the ALJ must move on to the next question.
  *Step 2.*  Does the claimant suffer from a severe impairment?  If not, then the claimant is not disabled.  If there is a severe impairment, the ALJ moves on to step three.
  *Step 3.*  Does the claimant's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If so, then the claimant is disabled.  If not, the next question must be resolved.
  *Step 4.*  Can the claimant perform his or her former work?  If the claimant can perform his or her past relevant work, he or she is not disabled.  If not, the ALJ must answer the last question.
  *Step 5.*  Can he or she engage in other work of the sort found in the national economy?  If so, then the claimant is not disabled.  If the claimant cannot engage in other work, then he or she is disabled.  <u>See</u> 20 C.F.R. §§404.1520(a)-(f), 416.920(a)-(f); see also <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1237-40 (11th Cir. 2004); <u>Foote v. Chater</u>, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The court "may not decide the facts anew, reweigh the evidence or substitute it's judgment for that of the [Commissioner]."Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F. 3d 1436, 1440 (11th Cir. 1997).

**B.  Reversal and Remand**

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause. 42 U.S.C. § 405 (g)(Sentence Four). The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). This Court may reverse the decision of the Commissioner, and order an award of disability benefits, where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  The district court may also remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405 (g); under sentence six of 42 U.S.C. § 405 (g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1089 - 92, 1095, 1098 (11th Cir. 1996).

To remand under sentence four, the district court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the

law relevant to the disability claim. Jackson, 99 F.3d at 1090 - 91 (remand appropriate where ALJ failed to develop a full and fair record of claimant's residual functional capacity); Davis, 985 F.2d at 534 (remand to the Secretary is warranted where the ALJ has failed to apply the correct legal standards).   Where the district court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow the Commissioner to explain the basis for his decision. Falcon v. Heckler, 732 F.2d 827, 830 (11th Cir. 1984). (remand was appropriate to allow ALJ to explain the his basis of his decision).

On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence upon a showing that there is new evidence which is material and that there was good cause for the failure to incorporate such evidence into the record during a prior proceeding. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983)(finding ALJ error and remanding to consider psychiatric evaluation); Reeves v. Heckler, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (remanding on the grounds that it is reversible error for the ALJ not to order a consultative examination when warranted). After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction. Jackson, 99 F.3d at1095.

In contrast, a sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant. Jackson, 99 F.3d at 1095. Sentence six of § 405 (g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405 (g) (sentence six). To remand under sentence six, the claimant must establish: 1.) that there is new, non-cumulative evidence; 2.) that the evidence is material — relevant and probative

so that there is a reasonable possibility that it would change the administrative result; and 3.) there

is good cause for failure to submit the evidence at the administrative level.  Jackson, 99 F.3d at 1090 -

92; Keeton v. Dept. of Health and Human Serv., 21 F.3d 1064, 1068 (11th Cir. 1994).   With a

sentence-six remand, the parties must return to the district court after remand to file modified findings

of fact. Jackson, 99 F.3d at 1095. The district court retains jurisdiction pending remand, and does not

enter a final judgment until after the completion of remand proceedings.[3] Id.

## THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than twelve months.

42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the

claimant unable to do his or her previous work, or any other substantial gainful activity which exists

in the national economy. 42 U.S.C. § 423 (d)(2); 20 C.F.R. §§404.1505 - 404.1511.

## DISCUSSION

The Plaintiff argues that (1) the ALJ failed to consider all of the Plaintiff's "severe

impairments"; (2) the ALJ failed to consider all of the Plaintiff's impairments in combination; (3)

the ALJ failed to properly analyze the Plaintiff's pain; (4) the Commissioner failed to carry his

burden at Step Five of the sequential evaluation process; and (5) the ALJ failed to properly

develop the record and failed to properly analyze the Listings.  The Commissioner, on the other

---

[3] The time for filing an application for attorneys fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 ["EAJA"] differs in remands under sentence four and sentence six. Jackson, 99 F.3d at 1089, 1095 n.4 and surrounding text. In a sentence-four remand, the EAJA application must be filed after the entry of judgment before the district court loses jurisdiction. Id. In a sentence-six remand, the time runs from the post-remand entry-of-judgment date in the district court. Id.

hand, argues that the ALJ supported his decision by substantial evidence, decided according to the correct legal principles, and that the decision should therefore be affirmed.

> ### *(1) Whether the ALJ failed to Consider All the Plaintiff's "Severe Impairments"?*

The ALJ found the "claimant's chronic plantar fasciitis status post removal of Morton's neuroma of the left foot and status post surgical resection of a heel spur are considered "sever" based on the requirements in the Regulations 20 CFR §§ 404.152 (c) and 416.920 (c). The Plaintiff argues the ALJ should have found that the Plaintiff's problems with her right foot and her left hand were also "severe" based upon the Regulations.

To determine whether a claimant qualifies for Social Security disability benefits, the ALJ must follow a five step sequential evaluation process set forth by 20 C.F.R. 404.1520. Johnson v. Barnhart, 268 F. Supp.2d 1317, 1324 (11th Cir. 2002). If a determination as to the claimant's disability can be made at one stage, it is not necessary for the ALJ to move on to the next step in the evaluation. McCruter v. Bowen, 791 F.2d 1544, 1546 (11th Cir. 1986). At the second step, the ALJ is to consider the severity of the claimant's impairment, taking into account the duration of the impairment and impairments in combination. Here, the ALJ must decide whether the impairment imposes a limit on the claimant's physical or mental ability to participate in basic work activities. Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

A medically determinable impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520 and 416.920. The Regulations require that if a "severe" impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis (20 CFR §§ 404.1523 and 416.923).

The ALJ notes the medical evidence establishes that the Plaintiff has a history of psoriasis of

the lower extremities. (Tr. 13). He cites to a letter dated November 21, 2000, where Dr. Salm states he had treated the Plaintiff for bilateral foot pain for several months that he diagnosed as heel spur with plantar fasciitis. The ALJ notes that the Plaintiff received conservative treatment including low-dye tapings, anti-inflammatory medications, and multiple cortisone injections. (Tr. 13). In March, 2001, the Plaintiff underwent surgical resection of heel spur with plantar fascial release bilaterally. Post-operatively, the Plaintiff reported that her feet were getting better. (Tr. 13). Later that year, the Plaintiff complained that her feet hurt and made walking almost unbearable. The clinical assessment by Dr. Salm was neuroma third interspace bilaterally. (Tr. 13). Dr. Salm stated he felt the Plaintiff could perform only sedentary work due to severe plantar fasciitis that prevented her from standing. (Tr. 199). Later, on January 28, 2002, Dr. Salm stated that the Plaintiff could not work "due to medical reasons" (Tr. 196).

Regarding the Plaintiff's complaints of right foot pain, in January, 2003, the Plaintiff returned to Dr. Salm with complaints of right foot pain following surgical removal of two neuromas on her right foot in December 2002. She reported that she could not walk on the entire foot; rather, she would walk on the outside of her foot. She also reported that she continued to have swelling, significant pain, and pins and needle feelings. The ALJ notes, however, that:

> She participated in physical therapy and at her January 16, 2003 visit, was able to perform all exercises without difficulty. Her sensitivity was diminishing and she became less sensitive as she performed more exercises. She continued to make slow progress. In February 2003, the claimant was doing well although she continued to have a small amount of swelling and soreness. She demonstrated an almost completely normal gait following a cortisone shot. Upon followup with Dr Salm, on March 6, 2003, the claimant stated she felt better following her cortisone shot as she was pain free. Upon discharge from therapy on March 18, 2003, the claimant was fully functional and had returned to school after achieving all of her physical therapy goals. (Tr. 13).

In regard to the Plaintiff's dermatitis, the ALJ points to the Plaintiff's evaluation by Dr.

Berdick.  Dr. Berdick prescribed medication to address her dermatitis which he projected to be easily controlled.

In regard to the Plaintiff's complaints of hand pain.  The Plaintiff testified that she could not work due to hand pain that limited her to lifting 10 pounds.  She also stated she could not work because of her hand problems that cause her to drop things due to pain and cramping.  The ALJ found that "regarding her hand pain, the record shows that the [Plaintiff] complained of left thumb pain and was treated conservatively with splint and strengthening exercises." (Tr. 15). The ALJ further pointed to the examination by the State Agency physicians.  They found the Plaintiff could life and carry up to 50 pounds occasionally and 25 pounds frequently.  (Tr. 14).

The ALJ found:

> the medical evidence indicates that the claimant has chronic plantar fasciitis status post removal of Morton's neuroma of the left foot and status post surgical resection of a heel spur, impairments that are "severe" within the meaning of the Regulations but not "severe" enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.  No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment.  (Tr. 14).

The Court finds that the ALJ properly evaluated and considered all of the Plaintiff's severe impairments.

### (2) Whether the ALJ Failed to Consider all of the Plaintiff's Medically Determinable Impairments in Combination or at Step 2 of His Evaluation

If a claimant has more than one impairment, the Commissioner must review the impairments symptoms, signs, and laboratory findings to determine whether the combination of impairments is medically equal to any listed impairment. Wilson v. Barhhart, 284 F.3d 1219, 1224 (11th Cir. 2002). It is the ALJ's duty to make specific and well articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the Plaintiff to be impaired.

<u>Walker</u>, 826 F. 2d at 1001.  The Plaintiff argues the ALJ failed to consider all of the Plaintiff's impairments in combination because he made no mention of the Plaintiff's hypertension or of her obesity in his discussion.

It is clear from the decision, the ALJ considered the Plaintiff's hypertension.  In his decision, the ALJ indicates that "When she presented to Dr. Robert in June of 2002, her blood pressure was under good control at 120/70 and her medication was refilled." (Tr. 13).  The ALJ also considers the evaluation of the State Agency physician from December 2003, whereby the physician notes that the Plaintiff has high blood pressure and is moderately obese. (Tr. 227).  Despite these notations, considering all of the Plaintiff's medical claims, the State Agency physician finds that the Plaintiff can lift up to 50 pounds occasionally, an up to 25 pounds frequently.[4]

In considering the combined effects of the Plaintiff's impairments, the ALJ found the Plaintiff could perform a significant range of sedentary work.  (Tr. 17).  This, by all accounts is less than that recommended by the State Agency physicians who believe that she was capable of light to medium work.  Thus, while the ALJ did not list obesity as a separate impairment he did consider the medical opinion of the State Agency Consultant who found that Plaintiff's obesity did not prevent her from having an RFC of medium level work.  Consequently, the Court must conclude that the ALJ did consider the Plaintiff's obesity as part of the medical record and part of the Plaintiff's combined impairments as a whole.

<u>(3) Whether the ALJ Failed to Properly Analyze the Plaintiff's Complaints of Pain</u>

The Plaintiff argues that the ALJ failed in properly analyzing the Plaintiff's subjective complaints including pain.  The Commissioner argues that the ALJ gave proper consideration to the

---

[4]The State Agency Physician also finds the Plaintiff can stand/and or walk (with normal breaks) for a total of about 6 hours in an 8- hour workday, and sit about 6 hours in an 8-hour workday.  (Tr. 227).

Plaintiff's subjective complaints of pain and that the ALJ properly evaluated the Plaintiff's allegations of disabling pain in accordance with controlling Eleventh Circuit case law.

Pain is a non-exertional impairment. Id. at 1559. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g. medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged. 42 U.S.C. § 423 (d)(5)(A). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard." Foote, 67 F.3d at 1560.

The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991). Pain alone can be disabling, even when its existence is unsupported by objective evidence. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423 (d)(5)(A).

In making his assessment, the ALJ indicated that he must consider all symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR § 404.1529, and Social Security Ruling 96-7p. The ALJ must also consider any medical opinions, which are statements from acceptable medical sources, which reflect judgments about the nature and severity

of the impairments and resulting limitations (20 CFR § a404.1527 and Social Security Rulings 96-2p and 96-6p). (Tr. 14).

The Plaintiff testified that she could not work because of chronic foot pain that prevented her from standing more than five minutes at a time.  She reported that her pain persisted despite several surgeries on her feet.  The Plaintiff also testified that she could not work because of hand pain that limited her to lifting 10 pounds.  She stated she could reach with her arms both outstretched and overhead.  When asked whether she could work at a job that allowed her to alternate between sitting and standing at will, she stated she could not work because of her hand problems that cause her to drop things due to pain and cramping.  (Tr. 15).

In his analysis of the Plaintiff's pain, the ALJ found:

> While the claimant has stated that she cannot work due to chronic foot pain that prevents standing for more than five minutes, the record shows that with proper treatment, her pain could be successfully eliminated as she was pain-free following a course of physical therapy and injection therapy.  Her treating physician, Dr. Salm, reported that she was pain-free following a steroid injection and discharged her from his care.  He subsequently stated that the claimant could not work due to her chronic plantar fasciitis.  However the record does not contain any treatment notes to support these allegations.  Regarding her hand pain, the record shows that the claimant complained of left thumb pain and was treated conservatively with splint and strengthening exercises (Ex. C7F).  (Tr. 15).

The ALJ also noted that the Plaintiff therapy discharge notice indicated she was fully functional after achieving all of her therapy goals and that the Plaintiff could return to school. (Tr. 13).  Therefore, the ALJ properly considered the Plaintiff's pain complaints by noting that the medical record evidenced that the Plaintiff was pain free after receiving treatment.

### (4) Whether the Commissioner Failed to Carry His Burden at Step Five of the Sequential Evaluation Process

_____Once the ALJ finds that a claimant cannot return to his or her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the

national economy. Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant. Id. at 1558; Allen v.Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989). This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines [the "grids"]. Foote, 67 F.3d at 1558.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors. 20 C.F.R. Part 404, Subpart P,Appendix 2, § 200.00 (e); Foote, 67 F.3d at 1559 (citing Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L. Ed. 2d 66 (1983) (holding that exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements). Exclusive reliance is not appropriate "either when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills." Walker v. Bowen, 826 F.2d 996, 1002-03 (11th Cir. 1987).  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert. Foote, 67 F.3d at 1559; MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986) (when nonexertional limitations are alleged, the preferred method of demonstrating that the claimant can perform specific work is through the testimony of a vocational expert). It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy. Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989). In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations. Foote, 67 F.3d at 1559.

Based upon the Plaintiff's residual functional capacity (RFC) as stated above, the ALJ must determine whether the Plaintiff can perform any of her past relevant work. The phrase "past relevant work" is defined in the Regulations at 20 CFR §§ 404.1565 and 416.965. The work usually must have been performed within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the Plaintiff to learn to do the job and meet the definition of substantial gainful activity. In this case, the ALJ found the Plaintiff "has past relevant work as a cashier-fast foods, cook-fast foods, and short order cook." Given the stated RFC, the vocational expert (VE) testified the Plaintiff cannot return to any of her past relevant work. (Tr. 15).

Once the Plaintiff has established that she has no past relevant work or cannot perform her past relevant work because of her impairments, the burden shifts to the Social Security Administration to show that there are other jobs existing in significant numbers in the national economy that the Plaintiff can perform, consistent with her RFC, age, education and work experience. The Plaintiff's age, education, and vocationally relevant past work experience, if any, must be viewed in conjunction with the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations, which contain a series of rules that may direct a conclusion of either "disabled" or "not disabled" depending upon the Plaintiff's RFC and vocational profile.

The ALJ observed that the Plaintiff was born on May 8, 1957, and is currently 48 years old. (Tr. 116). He observed that this is defined in the regulations as a younger individual between the ages of 45 and 49 (20 CFR §§ 404.1563 and 416.963) (Tr. 16). She has a high school (or high school equivalent) education and has transferable skills from semi-skilled work previously performed. The ALJ noted the impartial VE testified that the Plaintiff has limited transferable skills to the medium level from the cook job. (Tr. 16). The ALJ concurred with the testimony of the VE and found the

Plaintiff has the aforementioned transferable skills. (Tr. 16).

The ALJ found that  based upon the Plaintiff's RFC, "she is capable of performing a significant range of sedentary work[5] as defined in 20 CFR §§ 404.1567 and 416.967.  (Tr. 16).  If the Plaintiff is capable of performing the full range of sedentary work, a finding of "not disabled" would be directed by the Grids.  The ALJ found the "claimant's ability to perform all or substantially all of the requirements of sedentary work is impeded by additional exertional and /or non-exertional limitations.  (Tr. 16).  Therefore, an impartial vocational expert may be used to help determine whether or not there are a significant number of jobs in the national economy that the Plaintiff can perform given her RFC and other vocational factors.

In the instant case, the ALJ called a VE, Joyce Ryan, and asked her whether jobs exist in the national economy for an individual of the Plaintiff's age, education, past relevant work experience and RFC as determined.  The VE testified that assuming the hypothetical individual's specific work restrictions, she is capable of making a vocational adjustment to other work.  The VE testified that given all of these factors, the Plaintiff could work as a surveillance system monitor, and school bus monitor.  Although the school bus monitor is light, the VE testified that it did not require any lifting. (Tr. 16).

Based upon the testimony of the VE, the ALJ concluded:

> considering the claimant's age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy.  A finding of "not disabled" is therefore, reached within the framework of Medical-Vocational Rules 201.21 and 201.28. (Tr. 16).

---

[5]Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

The Court finds that the ALJ properly determined the Plaintiff's RFC and then called a VE.  The ALJ then proposed a carefully worded hypothetical that included all Plaintiff's severe impairments.  Thus the ALJ properly evaluated step five of the process and the Court will not disturb his decision.

### (5) Whether the ALJ Failed to Properly Develop the Record and Failed to Properly Analyze the Listings

The Plaintiff asserts that the ALJ failed to fully develop the record because he did not reopen the prior decision to consider the opinion of Dr. Anne Bergin Hall, Ed.D. from Seagate Psychological Associates.  The ALJ in the prior decision discounted Dr. Hall's opinion and his decision was subsequently affirmed by this Court on August 3, 2006.  Therefore, the Government argues that the information from the prior decision is barred by the doctrine of collateral estoppel.

The Commissioner may reopen a decision under certain circumstances.  Greaux v. Apfel, 137 F. Supp. 2d 1308, 1314 (M.D. Fla. 2001).

> A determination, revised determination, decision, or revised decision may be reopened-
> (a) Within 12 months of the date of the notice of the initial determination, for any reason; [or]
> (b) Within four years of the date of the notice of the initial determination if we find good cause, as defined Sec. 404.989 to reopen the case . . . .
> 20 C.F.R. § 404.988, Section 404.989 defines "good cause" in the following terms:
> (a) We will find that there is good cause to reopen a determination or decision if-
>> (1) New and material evidence is furnished;
>> (2) A clerical error in the computation or recomputation of benefits was made; or
>> (3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made
> (b) We will not find good cause to reopen your case if the only reason for reopening is a change of the legal interpretation or administrative ruling upon which the determination was made.

Geaux, 137 F. Supp. 2d at 1315.

The prior ALJ's decision was issued on December 16, 2002.  The Plaintiff filed her new

application in this case for Disability Insurance Benefits on February 26, 2003, and for Supplemental Security Income on March 20, 2003.  The ALJ  held a hearing in this case on April 25, 2005, and issued his decision denying the Plaintiff's application for benefits on July 21, 2005.  Therefore, in this instance, the Plaintiff was notified of the initial ALJ's decision prior to February 26, 2003, and the second hearing was held on April 25, 2006.  The period between the Plaintiff's notification and the request to consider the Seagate materials presented at the prior hearing exceeded twelve months and, therefore, the good cause standard from 20 C.F.R. § 404.988 has to be applied to the ALJ's decision to reopen the prior decision.

At the April hearing, the Plaintiff's Counsel inquired if the ALJ could consider the records from Seagate Psychological Associates in particular Dr. Hall's IQ test results. (Tr. 30-31).  The Plaintiff argues that those test results could demonstrate the Plaintiff should have been found disabled at Step 3 of the sequential evaluation.  Under the good cause standard found in § 404.989, an ALJ cannot reopen a prior decision for the purpose of changing the legal interpretation or administrative ruling upon which the prior ALJ made his determination.  Thus, the ALJ could not reopen the case to consider the Seagate materials.

The ALJ even pointed out during the hearing that he would not use "anything that fell close to or prior to the last hearing." (Tr. 31).  Thus, the Plaintiff's argument that the ALJ failed to develop the record lacks merit because the ALJ was barred from using the Seagate materials.

Accordingly it is hereby

**RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED**.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from

attacking the factual findings on appeal**.**

**DONE AND ORDERED** at Fort Myers, Florida, this ___14th___ day of , 2007.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies:  Counsel of record